

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 10, 2016

<u>By Hand and ECF</u>
Hon. I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: <u>*United States of America v. Alan Berkun*,
> Criminal Docket Nos. CR-00-930 (ILG), CR-00-1248 (ILG),
> CR-01-1457 (ILG), CR-10-512 (ILG), CR-11-214 (ILG) (E.D.N.Y.)</u>

Dear Judge Glasser:

      The Court issued a Scheduling Order in the above-referenced cases on October 20, 2016, directing the government to provide a response to the relief sought in paragraphs 1, 2 and 3 of defendant Alan Berkun's (the "defendant") October 8, 2016 letter motion (the "defendant's letter motion"). Our response to the defendant's letter motion is set forth below.

<u>Background</u>

      The Court sentenced the defendant on January 5, 2012 for his guilty pleas entered in connection with the five separate criminal cases referenced above. The defendant was ordered to pay restitution in two of the cases: <u>United States v. Berkun, et al.</u>, CR-00-1248 (the "Stock Fraud case") and <u>United States v. Berkun</u>, CR-11-0214 (the "Tax Fraud case"). With respect to the Stock Fraud case, the defendant was sentenced, among other things, to pay restitution in the amount of $3,684,199.03 to the victims identified in the list attached to the criminal judgment entered in that case. The judgment in the Stock Fraud case provided that the defendant was to pay "$25 quarterly while incarcerated and 10% of his gross monthly income after release until the total monies of $3,684,199.03 are paid in full." With respect to the Tax Fraud case, the defendant was sentenced, among other things, to pay restitution in the amount of $390,590 to the Internal Revenue Service. The defendant served a term of incarceration for his convictions in the five above-referenced cases and was released on May 21, 2015. Currently the defendant is on supervised release, which is set to expire in May 2018.

      During the latter part of 2015 and early 2016, the government and the defendant litigated, among other issues, the question of whether the defendant's restitution

liability in the Stock Fraud case was joint and several with his co-defendants in the Stock Fraud case. The written judgment entered in the Stock Fraud case indicated that the defendant was jointly and severally liable for the restitution amount with the co-defendants in that case. However, it was the government's position that the written judgment conflicted in this respect with the oral pronouncements of the Court at sentencing and that the defendant was not jointly and severally liable with his co-defendants.

Ultimately, the Court ruled during a February 5, 2016, hearing (the "February 5 hearing") that the defendant was not jointly and severally liable with his co-defendants in the Stock Fraud case because, inter alia, the Court did not have jurisdiction over those co-defendants, who were sentenced by District Judge Nicholas G. Garaufis. See Transcript of February 5, 2016 Hearing, at pp. 13-17, 20-21, 25-26 and 35. (A copy of the transcript of the February 5 hearing is attached hereto.)

In addition to the issue of joint and several liability, the defendant had also requested that any interest which accrued on the monies collected from the defendant should be credited towards his restitution liability; the defendant erroneously calculated that such accrued interest amounted to approximately $340,000. See Motion to Compel, filed on December 1, 2015, as Dkt. No. 28 in CR-11-214, at pp. 13-15 and Attached Chart. In response, the government noted that the defendant's calculation of interest was based on the mistaken assumption that all of the restitution payments made by the defendant were placed into an interest-bearing account. See Memorandum of Law in Response to Defendant's Motion Concerning Restitution, filed on January 29, 2016, at pp. 11 and 22-24. In fact, only $861,132.50 of forfeited funds were placed into interest-bearing accounts for a period of time, accruing $135,825.23 in interest. Id.

At the February 5 hearing, the defendant's counsel did not challenge the government's calculation of accrued interest. Indeed, it was the government that requested "a specific order that the interest that accrued on the funds that were held in the registry of the court" be credited to the defendant's restitution liability. See Transcript of February 5, 2016 Hearing, at p. 28. The Court granted this request, directing that the "$2,401,961 in funds and $135,825.23 in interest on those funds" be credited towards the defendant's restitution obligation. February 8, 2016, Order, Dkt. No. 992. Therefore, the defendant's request for "a continuing interest calculation for my monies held per your February 2016 rulings," see Defendant's Letter Motion, at p. 2, ¶ 1, has already been resolved.

The defendant also requests that the Court order "final disclosure of all documents," per the Court's "February 2016 rulings." See Defendant's Letter Motion, at p. 2, ¶ 1. It is unclear what "documents" the defendant is referring to. A review of the transcript of the February 5 hearing, as well as the subsequent written order issued by the Court, does not indicate that the Court directed disclosure of any documents.

On May 4, 2016, the government mailed two letters to the defendant's counsel, Jeffrey Hoffman. One letter was a request that the defendant compete a financial statement. The second was a letter from the undersigned, noting that the defendant had failed

to make any recent payments towards his restitution and demanding on behalf of the government that the defendant pay the restitution judgment in full.

The defendant has stated, "I might add that I also make 25.00 dollar monthly payments to the Clerk of the Court even though I am still unemployed." Defendant's Letter Motion, at p. 2. This statement is misleading for two reasons. First, the defendant did not begin making restitution payments for a full year after his release from incarceration in May 2015. The defendant only began making restitution payments in June 2016, after the government sent the aforementioned demand letter. Second, the defendant claims that he is unemployed, suggesting he has had no income with which to pay restitution. In fact, earlier this year, the defendant settled a lawsuit and received a monetary settlement of more than $420,000. The defendant did not disclose this lawsuit or the monetary settlement in the financial statement he provided to the Financial Litigation Unit in June 2016.

The government only learned of this settlement by subpoenaing one of the parties to that lawsuit.[1] The government also subpoenaed the defendant for documents concerning this lawsuit. However, the defendant refused to produce responsive documents on the basis that the settlement agreement in the lawsuit contained a nondisclosure clause. The defendant has yet to disclose to the government the disposition of the $420,000 settlement.

Individual Retirement Accounts

As stated in the defendant's letter motion, the defendant provided the Financial Litigation Unit with a financial statement in June 2016, in which the defendant disclosed his SEP Individual Retirement Account (IRA) and Roth IRA, both held at Oppenheimer & Co., Inc ("Oppenheimer"). The two IRA accounts hold funds in excess of $330,000. However, the defendant's financial statement did not disclose the $420,000 settlement discussed above. Further, the defendant's financial statement provided incomplete documentation and information.

On June 14, 2016, the undersigned served Oppenheimer with a restraining notice pursuant to Section 5222 of the New York Civil Practice Law and Rules. The restraining notice forbids the transfer or other disposition of property in which the defendant has an interest. See N.Y. C.P.L.R. § 5222(b). The defendant was also served with a

---

[1] The lawsuit was a civil action taking place in Florida state court. Information regarding this civil action, styled Alan Berkun v. Kimberlee Joan Thomas, Case Number: 50-2015-CA-005971, is publically available online at: http://www.mypalmbeachclerk.com/courtrecords.aspx.

3

restraining notice pursuant to C.P.L.R. § 5222 on March 7, 2016. A violation of the restraining notice is punishable as a contempt of court.[2] See N.Y. C.P.L.R. § 5251.

On September 26, 2016, the government initiated garnishment proceedings under the Federal Debt Collections Procedure Act (the "FDCPA") against Oppenheimer as garnishee (the "garnishee"). The garnishee was served with a writ of continuing garnishment, as well as other supporting garnishment documents, on September 29, 2016. The defendant was served with a writ of continuing garnishment, as well as other supporting garnishment documents, on October 13, 2016. The garnishee's answer to the writ of continuing garnishment has been served on the government and the defendant, but has not yet been electronically filed on the docket. Pursuant to the writ of continuing garnishment, the garnishee is required to "withhold and retain any property in which the debtor has a substantial nonexempt interest and for which the garnishee is or may become indebted to the judgment debtor pending further order of the court." 28 U.S.C. § 3205(c)(2)(F).

The defendant has asked the Court to adjudicate the validity of "the restraining order." See Defendant's Letter Motion, at p. 2, ¶ 2. It is unclear whether the defendant is referring to the restraining notice served under C.P.L.R. § 5222 or to the mandatory restraining provisions of 28 U.S.C. § 3205(c)(2)(F). Based on the substance of the defendant's motion, the government assumes that the defendant is attacking the government's ability under the FDCPA to restrain and garnish funds in the defendant's IRA accounts. (We also note that that the C.P.L.R. restraining notice served on the garnishee was made redundant by the writ of continuing garnishment served on the garnishee.)

A Criminal Restitution Judgment May be Satisfied by the Garnishment of an IRA[3]

As discussed above, the Court issued a judgment in the Stock Fraud case, ordering the defendant to pay restitution in the amount of $3,684,199.03. A restitution order creates a lien on "all property or rights to property" of the defendant as if the liability were a liability for a tax assessed under the Internal Revenue Code. 18 U.S.C. § 3613(c). The government may enforce a criminal judgment imposing restitution in "accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. §§ 3613(a) and (f).

Thus, the government may use any of the procedures provided in the FDCPA, including garnishment, to enforce the judgment. See 28 U.S.C. §§ 3001, et seq. A court may issue a writ of garnishment against property in which the debtor has a substantial non-exempt

---

[2] It appears that the defendant did, in fact, violate the restraining notice by transferring or disposing of the money received from the settlement of the aforementioned Florida state court action.

[3] This section of the letter responds to the defendant's requested relief contained in paragraph numbered 2 of the second page of defendant's letter motion, "Adjudication of the restraining order and its validity in the 2nd Circuit (a case of first impression)."

4

interest and which is in the possession, custody and control of a person other than the debtor. See 28 U.S.C. § 3205. However, a defendant ordered to pay a fine or restitution under Title 18 may not elect to utilize the exemptions available under the FDCPA, 28 U.S.C. § 3014. See 18 U.S.C. § 3613(a)(2); see, e.g., United States v. Lambert, 395 F. App'x 980, 981 (4th Cir. 2010); United States v. Phillips, 50 F. App'x 303, 305 (6th Cir. 2002).

The only exemptions or restrictions applicable to the enforcement of a judgment of fine by the government are those derived from the Internal Revenue Code and the Consumer Credit Protection Act, 15 U.S.C. § 1673. See 18 U.S.C. §§ 3613(a)(1) and (3). An IRA is not listed among those exemptions. Accordingly, the two IRA accounts at issue are subject to garnishment.

The government's response to the defendant's request for early termination will be separately filed by the criminal prosecutor assigned to this case. Thank you for your consideration of the instant letter.

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney

By:  /s/
Peter A. Laserna
Assistant U.S. Attorney
(718) 254-6152

Enclosure

cc: Jeffrey C. Hoffman, Esq.
*Counsel for Defendant Alan Berkun*